UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAROLYN M. MIRE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-2582** |
| **AMERICAN MULTI-CINEMA, INC., AND FLIK, INC.** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendants, American Multi-Cinema, Inc. and FLIK, Inc. (Doc. #30) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.[1]

## BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendants, American Multi-Cinema, Inc. ("AMC") and FLIK, Inc. This is the second motion for summary judgment in which AMC argues that plaintiff's claims are prescribed on the face of the complaint, and that plaintiff cannot prove that prescription of her claims was interrupted by AMC's acknowledgment of its alleged debt to her.

On October 17, 2014, plaintiff, Carolyn M. Mire, filed this action in the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana, alleging that she was injured on August 4, 2013, when she tripped and fell over a defective handicapped parking sign base and protruding metal piece attached to the base in the parking lot of the AMC theater in Harahan, Louisiana. The theater and parking lot are owned by Flik and leased to AMC. AMC removed the

---

[1] Plaintiff filed a Motion In Limine (Doc. #29) seeking to exclude the report and testimony of Dane Ciolino, defendants' proffered expert on the practice of law. The court does not rely on Ciolino's report in ruling on defendants' Motion for Summary Judgment. Thus, plaintiff's Motion in Limine is DISMISSED AS MOOT.

case to the United States District Court for the Eastern District of Louisiana alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.

In her petition, Mire alleges that prescription of her claim against AMC was interrupted by AMC's acknowledgment of the accident and injury. Mire alleges that following facts to support her contention:

- Pennsylvania attorney, Alan Gelb, communicated on her behalf with Chris Downard, AMC's adjustor.

- On January 16, 2014, Gelb notified Downard of his representation of Mire in response to an August 5, 2013, letter to Mire from AMC.

- On January 29, 2014, Downard informed Gelb and Mire that AMC was self-insured with liability coverage, and that excess coverage was available.

- On March 31, 2014, Downard sent a "Medicare Consent to Release" form to Gelb for Mire's signature, and advised Gelb that it was his intention to obtain Mire's medical information from Medicare to get the Conditioned Payment Amount that would be required to repay Medicare.

- On April 23, 2014, Gelb set the executed Medicare Consent to Release and HIPPA documents to Downard.

- On July 14, 2014, Gelb sent copies of Mire's medical records to Downard with an offer to settle Mire's claim.

- Thereafter, Downard contacted Gelb by telephone and requested copies of Mire's medical bills to evaluate Mire's claim.

- Gelb sent Mire's medical bills to Downard on August 11, 2014.

- Downard ceased all communication on August 11, 2014 because Mire's claim had prescribed, all the while lulling Gelb, who was unaware of Louisiana's one-year prescriptive period, into believing that there was time to file suit if settlement negotiations failed.

On November 17, 2014, AMC filed its first motion for summary judgment on prescription and acknowledgment "challeng[ing] plaintiff (and her attorney) to show some admissible evidence that will allow her to prove these facts at trial." AMC argued that Mire "cannot meet this challenge," and "has not and cannot provide any admissible evidence that would show that AMC acknowledged any debt to the plaintiff." AMC also argued that any communication between Downard and Gelb do not evidence AMC's acknowledgment of liability, but rather its acknowledgment of the existence of the claim, which does not interrupt prescription.

Mire argued that Downard's communications with Gelb evidence AMC's acknowledgment of Mire's claim and its intent to settle that claim. Mire stated that AMC made "numerous acknowledgments of liability for the accident and [her] claim; assurances that the claim would settle without the necessity of a lawsuit; and repeated requests for information and documentation regarding the claim and [her] expenses over a seven-month period." Specifically, Mire argued that Gelb thought that Downard's request for plaintiff's Medicare information indicated an intent by AMC to settle the claim, and that liability was uncontested. According to Mire, Downard "requested information to help calculate the extent (i.e. dollar amount) of AMC's liability, not to determine whether AMC was actually liable." Further, in a letter to Gelb dated January 29, 2014, Downard explains that AMC is self-insured, and states that he "look[s] forward to working with [Gelb] on this matter and [is] hopeful [they] can move this toward a timely resolution." Gelb testified at his deposition that Downard stopped communicating with him after prescription had run and then chuckled as he told Gelb that AMC would not settle because no suit had been filed. Mire argued that Downard's communications with Gelb lulled her into believing that liability was not contested and that the claim would be settled.

3

The court denied AMC's first motion for summary judgment finding that Mire produced enough evidence to establish a genuine issue of fact regarding AMC's acknowledgment of its alleged debt to her. The court reasoned that:

> AMC negotiated with Mire's attorney during the time immediately before and through the one year anniversary of the event. Gelb testified at his deposition that AMC's actions in requesting Medicare information and medical bills, and informing him about AMC's insurance coverage lulled him into believing that AMC would not contest liability and pay the claim. Gelb also testified that Downard "chuckled" after informing Gelb that he would no longer negotiate because prescription had run and no suit was filed. This evidence indicates that the debt may have been acknowledged. Thus, Mire has produced enough evidence to raise a genuine issue of fact regarding the interruption of prescription, and overcome AMC's "challenge" to submit such evidence.

On September 1, 2015, AMC filed a second motion for summary judgment again arguing that Mire's claim is prescribed. AMC contends that new evidence, consisting of Downard's affidavit, deposition and claims file notes, prove that AMC did not tacitly acknowledge its alleged debt to Mire so as to interrupt prescription. Mire argues that this new evidence demonstrates that there are contested issues of material fact regarding AMC acknowledgment of its debt to her.

## ANALYSIS

**I.    Summary Judgment Standard**

Under Rule 56(c)(1)(B) of the Federal Rules of Civil Procedure a party may support a motion for summary judgment by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir.

1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## II. Prescription

Delictual actions, such as a claim of negligence, prescribe one year from the day the injury or damage is sustained. La. Civ. Code art. 3492. Mire alleges that she was injured on August 4, 2013, and she filed her suit on October 17, 2014. Thus, her claims are prescribed on the face of the complaint. When a defendant "shows that the petition is prescribed on its face, the plaintiff bears the burden of proving [that] the prescriptive period has been suspended, interrupted or renounced." Wilhike v. Polk, 999 So.2d 83 (La. Ct. App. 2008) (citing Lima v. Schmidt, 595 S.2d 624 (La. 1992)). Mire argues that prescription was interrupted by AMC's acknowledgment of its debt to her.

Pursuant to Louisiana Civil Code article 3464, "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." In Morris v. Westside Transit Line, 841 So.2d 920, 926 (La. Ct. App. 2003), the court explained:

> Interruption by acknowledgment may be oral, in writing, formal, informal, express or tacit. With respect to delictual actions, the acknowledgment need not be of a certain amount of damages, only of the defendant's responsibility and plaintiff's right against that

5

> defendant. A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability.

(internal quotations and citations omitted). Further, Louisiana courts "have added to the above generalizations other criteria that evidence an acknowledgment, including undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contact with the creditor through the prescriptive period." Lima v. Schmidt, 595 So.2d 624, 634 (La. 1992). However, [r]ecognitation of the mere existence of a disputed claim is not such an acknowledgment as will effect an interruption." Christen v. Al Copeland Enters., Inc., 635 So.2d 596, 599 (La. Ct. App. 1994) (citing Gaharan v. State, through DOTD, 566 So.2d 1007 (La. Ct. App. 1990)). Moreover, "mere recognition of a disputed claim, conditional payments, and settlement or compromise offers or negotiations do not evidence an acknowledgment." Waller v. Stuckey, 613 So.2d 643, 645 (La. Ct. App. (1993) (citations omitted).

Mire argues that prescription was interrupted because Downard lulled Gelb into believing that liability would not be contested. She points to Downard's informing Gelb about AMC's insurance coverage and requesting Medicare and other medical information. Mire also argues that AMC acknowledged the debt because, after receiving Gelb's settlement demand in July 2014, Downard requested medical bills and a Medicare form. Gelb testified at his deposition that Downard knew it would take time to obtain the medical records, and then refused to settled after the prescriptive period lapsed a few days later. Mire also argues that Downard knew that Louisiana's prescriptive period was one year, whereas the statute of limitations in Pennsylvania and New Jersey, where Gelb is licensed to practice law, is two years.

6

Downard testified at his deposition that he did not have any discussions with Gelb regarding AMC's liability for Mire's accident, and he never made any offer to settle her claim. Downard testified that he viewed photographs of the area where Mire was injured and considered the handicapped sign base to be an open and obvious hazard. Thus, he thought Mire was liable for her fall. Downard testified that he has authority to settle claims at a maximum of $25,000, and that Mire was demanding $150,000. Downard testified that it is standard practice to obtain medical bills and Medicare information in the adjustment process, because he cannot evaluate the claim and present it to AMC for settlement discussions until he has such information.

Downard's claim notes from September 3, 2014, state that he spoke with Gelb that day. During that conversation, Downard told Gelb that Gelb's correspondence transmitting the medical bills to Downard was dated seven days after the prescriptive period lapsed, and Gelb responded that there is a two-year statute of limitations, which is incorrect. Indeed, at his deposition Gelb testified that, if he had known that Louisiana has a one-year prescriptive period, he would have recommended to Mire that she hire a Louisiana attorney to file suit before it lapsed. Gelb also testified that he has never let a statute of limitations run without filing suit.

Downard's and Gelb's testimony establish that prescription was not interrupted. Downard never acknowledged AMC's alleged debt to Mire. Downard requested information necessary to adjust the claim, without acknowledging AMC's liability. In White v. Miller, 447 So.2d 1192 (La. Ct. App. 1984), the insurance adjustor engaged in settlement discussions with plaintiffs, and even sent them checks, which were never cashed. The court held that these actions were settlement discussions, not acknowledgment of the debt so as to interrupt prescription. In comparison, Downard's actions of requesting information to adjust the claim certainly do not rise to the level of

acknowledging the alleged debt. Therefore, defendants' motion for summary judgment is GRANTED, and plaintiff's claims are DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendants, American Multi-Cinema, Inc. and FLIK, Inc. (Doc. #30) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  24th  day of September, 2015.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**